Middleton was appellant's engineer on a passenger train running from Houston, Texas, to Lafayette, La., and the injury he alleged was at Beaumont. The negligence alleged as the cause of his injury was that defendant's employees who were engaged in operating another engine negligently caused and permitted the same unawares and without warning to collide with great and unnecessary violence against the train of cars and locomotive engine on which plaintiff was standing and to violently move and suddenly stop same, in the operation of which locomotive engine plaintiff was engaged as aforesaid. That in said collision and in the jerking of said engine and train and in the sudden moving and stopping of same and on account thereof, plaintiff was thrown with great force and violence against a certain hard substance to wit: "A sand box, and one or more of his ribs driven in and broken, and dislocated and detached from the breast-bone, and he was otherwise injured in and about his breast, back, heart and lungs, said injuries being of a serious and permanent character." There was a verdict in favor of plaintiff for $10,000. *Page 499 
Besides general demurrer and denial, defendant pleaded that the coupling was done in the usual manner, that there was no sudden jar, movement or stop; that plaintiff's injuries, if any, were the result of a risk ordinarily incident to his employment, but if it was an extra hazard, it was open, apparent and known to plaintiff, and that he aggravated his injuries by running a train and engine the next day.
As there are assignments of error that question the verdict as against the evidence and also against the preponderance thereof, it becomes necessary to advert, to some extent, to the testimony. There was testimony of the following facts: That this train was going east and as it stopped at Beaumont its length made it obstruct two streets, in which case the practice was for switchmen to cut the train near the engine, and for a switch engine to couple on the rear end of the train and draw the rear portion of the train back a sufficient distance to clear the street. There was testimony by plaintiff and another engineer, both having had long experience, that such was the invariable practice and they had never known this to be attempted by the switch engine coupling onto the train engine. This is what was done on this occasion.
Plaintiff testified in substance that when the train stopped at the station he got down off his box and was engaged in getting his torch ready for the purpose of utilizing the time in examining his engine, when a switch engine with great force and violence struck his engine for the purpose of coupling with it automatically, pushing it and the train back about 30 or 35 feet, throwing him towards the boiler head and before he recovered his balance or about regained it, it suddenly and abruptly stopped and reversed, which threw him in the opposite direction against the sand box, the corner of which struck him in the region of the breast-bone and injured him. Plaintiff testified that there was no necessity or occasion for so violent a coupling and that it could have been made so as not to move the engine over two inches; that it was usual and understood that no man will couple to an engine without notifying the crew on the engine. That on this occasion he saw the switch engine ahead of him on the track, could see the headlight (it was night), but he didn't know it was a switch engine and supposed when it rang the bell that it was going to get out of the way. That he didn't expect such a thing as the coupling of a switch engine to his engine.
There were witnesses, viz.: the conductor of plaintiff's train, the engineer and fireman of the switch engine, the foreman and certain members of the switch crew, whose testimony in the aggregate went to show such facts as the following: That plaintiff was getting on his seat box when the coupling was made, that there was no sudden jar or jerk in starting the train backwards, that the coupling was not a hard one and was made in the usual and regular manner, that after the train had been pushed it remained standing for a time before the engine was started back; one said two or three minutes, one said not over a minute, and that "we shoved back, cut the crossing, and then pulled ahead." There was testimony that all the switchman had to do was to *Page 500 
raise the lever and cut the cars. Also that it was not unusual to couple onto an engine, and that trains had been cut there several times by coupling onto engines.
The Conductor Moore testified also: "I remember nothing unusual except that the train was handled rather roughly there that night. The train commenced moving backwards before my passengers were all off and stopped suddenly. It started to back up and stopped suddenly, he supposed that the application of the air stopped it suddenly. That there were passengers on the train at the time, and it caused a lady to stagger around and he admitted that he exclaimed at the time, on account of the way the train was handled, 'Damn you, you will kill some one here yet!' That when the train commenced backing he pulled the signal cord for it to stop."
Plaintiff testified: "The engine was knocked about her length. When they pushed the cars over the crossing they stopped and started back at the same time. They stopped with a hard jerk. They either put on the air on the switch engine, or reversed it. They stopped it quick and started right back and threw me over. After the first jerk he did not regain his footing before he was hurt. They kept him going. He didn't have any chance at all to regain his footing or catch himself. His reverse lever was down in a corner and he didn't have anything to catch to. The sudden stop and start back is what threw me against the box. The way it was, when they threw me back against the boiler-head and he made this sudden stop and then I went forward and I was standing about four feet from the sand-box when I fell over against the corner. When I recovered from the other I must have gotten straight." Plaintiff testified that he was not injured by being thrown against the boiler-head, but his testimony shows that the coupling and the stop were done in a violent, unusual, unnecessary and unexpected manner, and in this his testimony is not without corroboration.
Appellant by the fifth assignment urged that the following ground for its motion for new trial should have been sustained: "Because the verdict of the jury is against and not supported by the evidence, in this: The plaintiff, in his testimony, claims that he was thrown back against the head of the boiler by the jar caused by the coupling of the switch engine to his engine, but he was not hurt or injured thereby, but that, being unable to regain his feet, owing to the rapidity of the movement, and by a very sudden and unusual stop in the movement, and instantaneous movement forward of the train, he was thrown against the sand-box and received the injuries sued for. He also testifies that the signals from his conductor to stop the train did come into his engine, but he had then already received the injuries, and was down on the deck of the engine, and could not respond to the same. And that the movement to the rear, stop, and sudden forward movement, all occurred within twenty seconds time, thus showing that plaintiff, if he had been thrown against the boiler-head, had sufficient time to regain his feet after the coupling, and before the sudden stop and instantaneous movement forward, and, further, it is shown by *Page 501 
his witness, Moore, that there was no sudden jerking in the coupling and rear movement, and that the signals were given before the rear movement stopped. Also, plaintiff testified that when he stopped the train he saw the switch engine on the track in front of the train, and should have anticipated the coupling."
The statement of plaintiff as to the circumstances of his injury was not necessarily improbable nor incredible, as we would have to hold in order to say that the verdict is without support. The jury had the right to accept his version of the transaction, as against the testimony of other witnesses. We do not see how we can be expected to say that they were not authorized to believe it. It certainly was not inconsistent with reason and experience that a violent coupling, plaintiff not expecting it, should throw him down as he stated, nor that a sudden stop and reverse movement, also unexpected, would throw him down again as he arose, or had about come to a standing position. Nor that his account was rendered incredible by the fact that he testified that the transaction occurred within fifteen or twenty seconds, which appellant contends shows was sufficient time for him to regain his feet before the sudden stop, and that therefore his whole statement must be treated as a fabrication. The conductor testified that as soon as the train commenced to back he pulled the cord which was a signal for the plaintiff to stop, he evidently supposing it was plaintiff who was handling the train. Plaintiff testified that the signal was given about the time of the sudden stop. The jury might have concluded from this that the time consumed in the entire transaction was not as much as fifteen or twenty seconds. And for those same reasons we overrule the sixth and seventh assignments which claim that the verdict should be set aside because against the great preponderance of the evidence.
The first and second assignments of error complain of the following charge: "If your verdict is for plaintiff under the instructions given, then he is entitled to fair and just compensation for the injuries proximately resulting to him from the casualty in question, including, if such injuries are of a permanent nature, such consequences, if any, as the evidence may show you have not yet actually ensued, but reasonably andprobably will; and in measuring the damages, if any, plaintiff has so sustained, you will take into consideration, so far as shown by the evidence to result from such injuries, naturallyand probably, the reasonable value of the time lost to plaintiff down to the trial, if any, consequent upon such injuries, and the reasonable sums of money expended by him, or for which he has incurred liability for necessary medical attendance and medicine, if any, and the physical and mental pain, if any, consequent upon such injuries, including such, if any, as he will reasonably and probably suffer therefrom in the future. And if you believe, from the evidence, that such injuries sustained by plaintiff, if any, are permanent, and will disable him to labor and earn money in the future, you will, in addition to the above, allow him such sum, if paid now, as will be a fair and just compensation to him for his future diminished capacity to labor and earn money." The underscoring is ours. *Page 502 
The points of complaint are: First, That it authorized the recovery of double damages; and second, That it was so framed as to be misleading and it reasonably appears that the jury were misled thereby. We think the instruction was not confusing, and it only remains to be considered as to permitting double damages for the same subject of injury. This charge as written does not twice authorize the award of damages for the same thing, and does not deal with the same element of damages more than once. In measuring the damages the jury were told first to consider time lost, and money expended or incurred by plaintiff for medicine and attendance; second, physical and mental pain, past and future; and third, if plaintiff's injuries are permanent and will disable him, compensation for his future diminished capacity to labor and earn money. That these subjects do not run into each other is evident.
The third assignment attacks the same charge further for the reason that plaintiff was not entitled to recover for elements of damage which "might probably" occur in the future. This is answered by a reading of the charge which instructed with reference to what would reasonably and probably ensue, if plaintiff's injuries were found to be permanent.
The fourth assignment objects to the thirteenth paragraph of the charge, as follows: "If you believe from the evidence, that the coupling onto and movement of the passenger locomotive and train by the switch engine, as done on the occasion in question, exposed plaintiff to an unusual risk or hazard, but that, when the passenger train stopped, he saw the switch engine ahead, and that he knew such switch engine would likely couple onto the passenger locomotive, and move it as was done, or that the risk or danger to him of its so doing was so obvious that, in the ordinary discharge of his own duties, he must necessarily have known it, then let the verdict be for the defendant." The only matter in the brief which is in the nature of a proposition in connection with the assignment is this: "The law is that if a reasonably prudent and cautious person under the circumstances, would have anticipated that such coupling would be made then plaintiff would be held to have known that such coupling would be made." In a supplemental brief appellant states the point to be that the charge is erroneous in that it applies a rule which has no application to the circumstances of this case. In other words, that the rule of assumed risk as given in the charge is the one applicable to dangers arising in the use of tools and machinery used by the servant, but not applicable to such dangers as arose in this transaction. We think there is no difference. An engineer or any servant on a train assumes all risks ordinarily incident to his employment, but not such as are created by the master's negligence. Such dangers he is not bound to anticipate any more than is an employee who works with tools or machinery. As to such dangers, he assumes risk only when he knows of them, or is charged with knowledge of them. As the rule is that he is not required to anticipate them, it follows that the law does not exact from him care with reference to avoiding them, as that would involve anticipation. The general rule of assumed risk was correctly given in the charge. No request was made for *Page 503 
anything more explicit. It was pleaded by defendant that the risk was an ordinary one attending plaintiff's employment, but if not, then that it was plain, open and apparent to plaintiff and therefore he assumed it. The charge complained of submitted this issue. The issue was in the case and it was properly submitted.
The eighth assignment complains of the amount of the verdict as excessive. Plaintiff was forty-four years of age, had lost no time from ill health, was earning about $1,800 a year, was rendered unable to pursue his occupation as engineer. His weight was reduced from 165 pounds to 140 pounds, can not lift a weight with his left hand, and when he attempts it it hurts him for several days and causes him to spit blood. He was unable to handle an engine. Can not sleep on his left side and his breathing is not what it was. His condition is permanent. The testimony of the physicians is such that his condition, as the result of the injury he received, will amply support the amount of this award. Judgment affirmed.
Affirmed.
Writ of error refused.